MONTE RICO MIN. & MILL. CO. et al. v. FLEMING et al.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919.)

No. 5037.

1. ACTIONS ⊸50(2)—JOINDER.
   Minority stockholders, who asserted that they had been induced to purchase their shares through the fraud of the promoter of the corporation, cannot join actions personal to them with actions against the majority shareholders on which the corporation alone could sue.

2. CORPORATIONS ⊸320(13)—ACTIONS BY MINORITY STOCKHOLDERS—INJUNCTION.
   In a suit by minority stockholders against the corporation officers and others for an accounting for corporate funds that came into the hands of individual defendants and for cancellation of corporate obligation and mortgages on the ground that they were taken fraudulently and without consideration, an order temporarily enjoining foreclosure or disposition of the mortgages is proper.

3. CORPORATIONS ⊸320(13)—ACTIONS BY SHAREHOLDERS—RELIEF.
   Where there was no contention that a corporation was not legally organized, or that it was insolvent, held that, in a suit by minority shareholders for cancellation of corporate obligations and mortgages on the ground that they were taken fraudulently and without consideration, the complete stoppage of corporate affairs is unnecessary, and a decree enjoining foreclosure or disposition of the mortgages should not enjoin the corporation from employing any person on a salary other than a watchman; thus stopping all corporate affairs.

4. CORPORATIONS ⊸320(13)—STOCKHOLDERS—RIGHTS OF.
   The right of a stockholder to sell his stock is one of the commonest incidents, and such disposition should not be enjoined in a suit by minority shareholders against the promoter and organizer of the corporation who it claimed misrepresented the number of shares he received, etc., where it did not appear that the promoter was not the owner of the shares with all lawful rights implied by such ownership.

5. CORPORATIONS ⊸320(13)—BOOKS—INSPECTIONS.
   In a suit by minority stockholders who were denied access to the corporate books, an order providing that they should be allowed access to the books is sufficient in the first instance, and the books of the corporation should not be ordered by mandatory injunction to be deposited in court for inspection of the parties.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Bill by Thurston W. Fleming and others against the Monte Rico Mining & Milling Company and others. From an order granting an injunction, etc., defendants appeal. Order modified, and, as modified, affirmed.

Lawrence R. Boyd, of Lynchburg, Va. (A. W. Morningstar and E. H. Mitchell, both of Lordsburg, N. M., on the brief), for appellants.

W. C. Reid, of Albuquerque, N. M. (J. M. Hervey and E. C. Iden, both of Rosewell, N. M., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. Certain minority stockholders of the Monte Rico Mining & Milling Company sued the company, its officers, its

majority stockholders, and others, for a receiver, an injunction, and an accounting. This appeal by defendants is from an order granting an interlocutory injunction and other temporary relief.

The company was organized by defendant Lawrence R. Boyd, his father and another, under the laws of Arizona, with an authorized capital of 500,000 shares of the par value of one dollar each. At the first meeting of the incorporators, a board of directors was chosen, and on the same day Boyd proposed to sell to the company certain mining claims in New Mexico in consideration of its entire capital stock; he to donate to the company 200,000 shares thereof for its treasury. The proposition was accepted and carried out, and the records of the company showed the transaction. The idea was to make all of the stock fully paid and to use the shares in the treasury to raise funds for development.

[1] The plaintiff stockholders acquired treasury shares sold by an agent employed by the company for that purpose. Part of the causes of action stated in the complaint are based upon alleged fraudulent representations, by Boyd personally, to induce the sale of the stock to them. It is averred that he represented that he had retained but 100,000 shares, that the remaining 400,000 were in the treasury, and that he (Boyd) was to serve as president without salary; that Boyd transferred the 300,000 shares retained by him to his wife and his father without consideration and to deceive and defraud creditors; that he caused dummy directors to be elected and irregular meetings of the stockholders and directors to be held; that of $40,000 or more received from sales of treasury stock he converted over $25,000 to his own use and refused to account for it; that the plaintiffs were denied the right to inspect the books and records of the company; that Boyd fraudulently caused the execution to himself and his brother of obligations of the company and mortgages securing them upon all its property without consideration; and that they were about to enforce them, etc. Without attempting to recite all the averments of the voluminous complaint, it is quite apparent that it proceeds upon the erroneous assumption that all controversies growing out of the organization and operations of the company and also individual dealings in its stock may be determined in a single suit. Plaintiffs have joined causes of action against Boyd personal to themselves with causes of action that are enforceable only by or on behalf of the corporation. Upon motion of defendants, the trial court dismissed three paragraphs of the complaint relating to the sale of the mining claims by Boyd for the entire capital stock, his donation of 200,000 shares to the treasury of the company, and his alleged fraudulent representations to induce the stock purchases by the plaintiffs. Aside from irrelevant averments, what remained were causes of action in the company which are properly assertable by stockholders in its behalf upon compliance with the conditions prescribed by Equity Rule 27 (198 Fed. xxv, 115 C. C. A. xxv). The order of the trial court appealed from may be briefly stated as follows: It denied the application for a receiver, but in lieu thereof, upon the giving of a bond by plaintiffs, enjoined the company, its officers and agents, from transacting any corporate business, and required it to deposit all its books, papers, and records with the

clerk of the court for inspection by the parties. It enjoined Boyd and his wife from disposing of the stock standing in their names upon the company books, and, in the case of the former, also the stock belonging to him but appearing in the names of others. It enjoined Boyd and his brother from foreclosing or disposing of the mortgages given by the company; and it enjoined the company from employing any person upon a salary other than a watchman with compensation not to exceed $50 per month.

[2, 3] Reduced to its proper dimensions, the suit is by stockholders for and on behalf of their corporation: First, for an accounting of corporate funds that came into the hands of individual defendants; and, second, for cancellation of company obligations and mortgages on the ground that they were taken fraudulently and without consideration. A recasting of the complaint with a clear observance of the equity rules would be helpful. In the above view, the order temporarily enjoining foreclosure or disposition of the mortgages is right; but we think the balance of the order appealed from should be vacated. There is no contention that the company was not legally organized and is not still an existing corporation with present corporate capacities. Nor is it charged that the company is insolvent. Moreover, this is not a suit for winding up its affairs. A complete stoppage of its operations is not a requisite remedy for the wrongs in issue.

[4, 5] Again, with the dismissal of the three paragraphs of the complaint it cannot be said that Boyd did not become the owner of 300,000 of the 500,000 shares of the stock of the company with all the lawful rights implied by such ownership. The right of a stockholder to sell and transfer his stock is one of the commonest incidents. The consideration of the transfer may be attacked in a proper proceeding by creditors sufficiently equipped, but the conditions are not present here. Again, those who hold the 300,000 shares of stock issued to Boyd for the mining claims are obviously majority stockholders. Their powers over the affairs of their corporation and the limitations upon those powers are too familiar for recital here. It may be said, however, that unless otherwise prescribed by statute any stockholder has the right to inspect the books of the corporation of which he is a member, for proper purposes and under reasonable regulations as to time and place. A denial of the right necessarily implies a remedy, and in Guthrie v. Harkness, 199 U. S. 148, 26 Sup. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433, a judgment was entered requiring defendants to permit inspection by plaintiff. If a case might be so extreme as to justify a court in impounding the books of a going corporation to enforce the right of inspection, which we do not decide, we do not think the one at bar reached that stage. An ordinary order would doubtless prove sufficient, or, if not, a mandatory injunction.

The order appealed from is modified by vacating the several parts thereof excepting that enjoining the disposition or foreclosure of the mortgages given by the defendant company to individual defendants, and as so modified it is affirmed.